IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| IP NAVIGATION GROUP, LLC; <br> TECHDEV HOLDINGS, LLC (f/k/a PLUTUS IP, LLC); <br> GEMINI IP, LLC (successor by merger to GEMINI IP TECHNOLOGIES, LLC); <br> CLEAR WITH COMPUTERS, LLC (f/k/a Orion IP, LLC); <br> MANUFACTURING SYSTEMS TECHNOLOGIES, LLC (f/k/a TAURUS IP, LLC); <br> BRIGHT RESPONSE, LLC (f/k/a POLARIS IP, LLC); <br> SFA SYSTEMS, LLC (f/k/a TRITON IP, LLC); <br> PRESENTATION SPECIALIST TECHNOLOGIES, LLC (f/k/a CONSTELLATION IP, LLC); <br> EMS TECHNOLOGIES, LLC (f/k/a PHOENIX IP, LLC); <br> GRANICUS IP, LLC (successor by merger to CT IP HOLDINGS, LLC; MT IP HOLDINGS, LLC; PA ADVISORS HOLDINGS, LLC; ST SALES TECH IP, LLC; TRAVEL IP TECHNOLOGIES, LLC); <br> ST SALES TECH HOLDINGS, LLC; <br> nXn TECH, LLC (f/k/a PA ADVISORS, LLC); <br> TS MEDIA TECH IP, LLC; <br> TT IP, LLC; <br> CUSHION TECHNOLOGIES, LLC; and <br> LSC HOLDINGS, LLC <br><br>         Plaintiffs <br><br>   v. <br><br> CISCO SYSTEMS, INC. <br><br>         Defendant | Civil Action No. _____ <br><br> JURY TRIAL DEMANDED |

## **ORIGINAL COMPLAINT**

This is an action by IP Navigation Group, LLC ("IPNav")—and TechDev Holdings, LLC; Gemini IP, LLC; Clear with Computers, LLC; Manufacturing Systems Technologies, LLC; Bright Response, LLC; SFA Systems, LLC; Presentation Specialist Technologies, LLC; EMS Technologies, LLC; Granicus IP, LLC; ST Sales Tech Holdings, LLC; nXn Tech, LLC (f/k/a PA Advisors, LLC); TS Media Tech IP, LLC; TT IP, LLC; Cushion Technologies, LLC; and LSC Holdings, LLC (collectively "Plaintiffs")—against Cisco Systems, Inc. ("Defendant" or "Cisco") seeking a declaratory judgment under Rule 57 of the Federal Rules of Civil Procedure ("Rule 57") and 28 U.S.C. § 2201 concerning the rights and status of the parties pursuant to a contractual agreement with Cisco.  Specifically, IPNav seeks a declaratory judgment that it is not in breach of any contractual obligation of the Agreement, defined in greater detail below, which resolved patent infringement litigation against Cisco.[1]  Declaratory relief is necessary—and on an expedited basis—to address ongoing damage to IPNav's reputation and lucrative consulting business caused by actions of Cisco through its agents and representatives.  Cisco's complained-of actions comprise its unfounded accusations that IPNav is failing to comply with its contractual obligations.  These actions have now created uncertainty among IPNav's current and prospective clients as to the ability of IPNav's to provide its intellectual property consulting services.

As permitted under Rule 57, Plaintiffs request that the Court expedite the hearing of this declaratory judgment action in light of the serious consequences of Cisco's conduct and this uncertainty concerning IPNav's business relationships and consulting business revenue.  In support, Plaintiffs allege as follows.

---

[1] Because there are other signatories to the Agreement—and any and all amendments thereto—by which the Gemini-Cisco Litigation was resolved (*see* ¶ 9) and for which IPNav in particular seeks expedited declaratory relief—other signatories, and others potentially impacted by a ruling such as LSC Holdings, LLC, also are named as plaintiffs insofar as they may have a claim or interest that could be affected by the Court's declaration.

## FACTUAL OVERVIEW

**A.     IP Navigation Group, LLC**

1.     IPNav is an intellectual property consulting firm, specializing in developing monetization strategies for clients with a diverse range of intellectual property portfolios. Since its founding in 2004 by its principal and chairman Mr. Erich Spangenberg, IPNav has earned the reputation as a leader in its field, having advised clients in various transactions with an estimated value of approximately $500 million. IPNav's reputation for being able to garner such results for its clients has been critical to IPNav's ability to increase its client base. IPNav's growing client base increases IPNav's own revenue, which derives from the fees clients pay under their consulting agreements with IPNav. Increasing demand for the types of services—and results— that IPNav provides has led to rapid expansion. IPNav's Texas offices in Marshall and Dallas, established in 2004, are now joined by offices in Dublin, Paris, and Shanghai. IPNav and its European subsidiary currently employ six experienced professionals in the United States and Europe with advanced degrees and over 60 years of combined experience in the intellectual property space.

2.     Since its creation in 2004 IPNav has exclusively been an intellectual property consulting firm. IPNav's engagement letters and contractual arrangement with its clients confirm its focus on a singular task: advising with respect to these clients' patent monetization activities. IPNav therefore does not own or seek to own patents or other intellectual property; it does not take any ownership interest in its clients; and it does not take board seats or assume management roles in its clients.

3.     IPNav's clients are diverse. They comprise companies operated by highly sophisticated and experienced individuals, including, for example: (i) one of the largest

philanthropists in Texas, (ii) distinguished law faculty from a top-rated law school in the United States, (iii) senior counsel from a company that figures among The Global 100, (iv) the former president of a Fortune 100 electronic games manufacturer, and (v) a company owned and operated by one of the original employees of Compaq Computer Corporation.

4. Although all of IPNav's clients are run by experienced business people and are extremely capable operators of their respective businesses, IPNav's clients do require specialized expertise concerning intellectual property monetization strategies. For this narrow area of expertise, they seek out IPNav as a trusted and experienced intellectual property advisor.

5. Because IPNav's clients are sometimes involved in litigation concerning their intellectual property portfolios, IPNav's clients have legal counsel advising them concerning legal issues bearing on their claims and representing them in court at all times. Even in the litigation environment, however, IPNav's consulting services remain highly relevant. Those services are critical for advising IPNav's clients on the financial ramifications of litigation, including the costs and benefits of a settlement, and considering the optimal financial interest of the client when settlement negotiations ensue. IPNav's services therefore necessarily include advising clients throughout the evaluation, financing, acquisition, disposition, commercialization and monetization processes, in order to protect and optimize the value of the client's intellectual property. If assistance is required beyond IPNav's merely advising concerning financial processes, LSC Holdings, LLC, a Texas-based lending company specializing in intellectual property transactions, provides financing on commercial terms if and when requested.

6. It is for these types of services that IPNav's clients have sought out IPNav's well-known expertise and entered into consulting agreements with IPNav. It is also for these types of

services that IPNav has been highly successful in generating revenue for itself through the fees clients agree to pay for IPNav's expertise pursuant to those consulting agreements.

**B. Cisco's Actions Have Created Tremendous Uncertainty And An Actual, Significant Controversy**

7. Actions of Defendant Cisco, through its agents and representatives, including its counsel Mr. Barton Showalter and Mr. Kurt Pankratz of Baker Botts L.L.P. (each based in the Dallas, Texas office of the Baker Botts law firm), have created substantial uncertainty concerning IPNav's providing advisory services to its clients on monetization strategies. The result is not merely speculative or hypothetical harm to IPNav and its consulting business. Cisco's conduct is already having significant financial repercussions for IPNav: it is adversely impacting client confidence and creating uncertainty among IPNav clients and prospective clients as to IPNav's ability to provide its highly effective strategic advice on monetization strategies.

8. This uncertainty threatens not only IPNav's reputation in the intellectual property and business community as a trusted and respected intellectual property advisor. It also threatens IPNav's current and future revenue stream from consulting fees it receives under consulting agreements with clients.

9. That an actual case or controversy exists is exemplified by recent communications from Cisco's counsel. For example, on November 2, 2010 Cisco's counsel Mr. Bart Showalter, with the Dallas office of Baker Botts L.L.P., sent a letter ("November 2 Letter") to outside counsel for Gemini IP Technologies, LLC (now known as Gemini IP, LLC) ("Gemini") concerning litigation between Gemini and Cisco that was resolved in November 2007 ("Gemini-

Cisco Litigation").[2] The letter, though addressed to Gemini representatives, was promptly forwarded to IPNav because it accused IPNav specifically of wrongful conduct. Cisco's November 2 Letter stated that IPNav's involvement with negotiations on behalf of current IPNav clients, who are involved in litigation with Cisco or a Cisco customer, was essentially unlawful conduct in light of an agreement by which the Gemini-Cisco Litigation was resolved ("Agreement"), the fact of which is a matter of public record. *See Gemini IP Technologies, LLC v. Hewlett-Packard Co., Cisco Systems, Inc., Adobe Sys., Inc.*, No. 3:07cv3797 (N.D. Cal.) Dkt. No. 23 (Joint Motion to Dismiss noting Gemini's and Cisco's settlement of Gemini's patent infringement allegations); *id*. at Dkt. No. 24 (order of dismissal with prejudice). Because of confidentiality provisions in the document that resolved that litigation ("Agreement"), however, a copy of the Agreement and its amendment are not attached at this time but will be once the parties confer on sealing that document for filing with the Court.

10. According to Cisco, IPNav is bound to all terms and conditions of the Agreement, despite the fact that the Agreement contains no provision covering IPNav's consulting services or limiting those types of services in any way (even though IPNav's business was well known to Cisco and its representatives when the Agreement, including all amendments thereto, were entered into). Cisco's baseless accusations of wrongdoing threaten to curtail IPNav's consulting relationships with its clients. Those unfounded accusations also threaten to radically hinder, if not shut down completely, IPNav's ability to perform the very services that have made IPNav so successful and earned its reputation as a trusted intellectual property advisor. Declaratory relief

---

[2] The Gemini-Cisco litigation is a matter of public record, as is the fact of an agreement by which they resolved that litigation. *See Gemini IP Technologies, LLC v. Hewlett-Packard Co., Cisco Systems, Inc., Adobe Sys., Inc.*, No. 3:07cv3797 (N.D. Cal.), Dkt. No. 1 (transfer order transferring all documents from Western District of Wisconsin to N.D. Cal.); *id*. Dkt. No. 23 (Joint Motion to Dismiss); *Gemini IP Technologies, LLC v. Hewlett-Packard Co., Cisco Systems, Inc., Adobe Sys., Inc.*, No. 3:07cv205 (W.D. Wis.) Dkt. No. 2 § 15 (Original Complaint in Gemini Litigation: allegations against Cisco for infringing the '932 patent).

is necessary to clarify that IPNav is not hindered in any way in providing consulting services to its clients if any of those clients happens to own intellectual property that Cisco and/or a Cisco customer are infringing.

11. Cisco representatives raised a like allegation concerning IPNav in November 2009, when Cisco engaged in an informational meeting in Dallas, Texas—at the Dallas office of Baker Botts—with outside counsel to Gemini. That meeting was held in order to discern in greater detail the nature of Cisco's allegations concerning IPNav's consulting business, specifically, how the provision of advisory services on monetization strategies could constitute an improper activity by IPNav in terms of how the Gemini-Cisco Litigation was resolved. Cisco failed to provide any meaningful detail regarding how IPNav's consulting business could ever be covered under the terms of the Agreement at this informational meeting.

12. By Cisco's November 2 Letter, however, sent approximately one year after the informational meeting in Dallas, it is clear that Cisco continues to maintain its unfounded position. It is now apparent that Cisco continues to maintain that IPNav is precluded from engaging in any of its consulting services concerning monetization strategies for clients vis-à-vis a Cisco customer or Cisco itself.

13. Cisco's maintaining this position is unfounded. Cisco has been made aware of (i) the limited nature of IPNav's consulting relationship with its clients, (ii) the fact that IPNav has never taken an ownership interest in any of its clients or in any intellectual property (including any patents), and (iii) the fact that there is nothing improper about IPNav's providing consulting services to clients who happen to have patent infringement litigation accusing a Cisco product or Cisco customer product. Based on like concerns that Cisco representatives raised at the November 2009 informational meeting in Dallas, IPNav, under appropriate confidentiality

protection, fully disclosed the limited nature of the business consulting relationship between IPNav and certain of its clients.

14. Despite those assurances and a document production to Cisco—comprising several megabytes of documents provided by IPNav to Cisco counsel Mr. Barton Showalter and Mr. Kurt Pankratz—Cisco's November 2 Letter manifests a clearly adverse position. The November 2 Letter threatens imminently and immediately IPNav's ability to pursue its core business activity of intellectual property consulting for those IPNav clients—current, potential, and prospective—who happen to own intellectual property that Cisco or a Cisco customer are infringing.

15. This uncertainty caused by Cisco's accusations is particularly unfounded because the Agreement by which Cisco resolved the Gemini-Cisco Litigation was negotiated by Cisco's counsel Mr. Showalter, assisted by Mr. Pankratz. IPNav's consulting services for its clients, who are diverse companies operated by sophisticated business persons, are nowhere prohibited in any provision that Mr. Showalter and Cisco representatives negotiated to resolve the Gemini-Cisco Litigation.

16. Even in negotiating an amendment to the original agreement to address a breach of the Agreement by Cisco, there was no attempt and no discussion to include any definition or provision that identifies IPNav's consulting services as a prohibited, unlawful activity whenever any Cisco product is accused of infringement. To accuse IPNav of failing to abide by a promise it never made (and could never make on behalf of its clients) offends the good faith and fair dealing precepts that govern the Agreement.

17. Moreover, Cisco has refused to comply with provisions of the Agreement that set forth dispute resolution procedures, which procedures were negotiated by Mr. Showalter and Mr. Pankratz.

18. This proceeding is therefore necessary to end the uncertainty that Cisco's communications have created that purport to limit how IPNav conducts its consulting business and earns lucrative consulting fees for its specialized advisory services. Such uncertainty (i) erodes IPNav's reputation as a highly effective and trusted intellectual property advisor and (ii) causes financial damage as IPNav clients choose to limit or foreclose their otherwise exclusive reliance on IPNav as their intellectual property advisor of choice.

## PARTIES

19. Plaintiff IPNav is a Texas limited liability company with Texas offices at 207C North Washington Avenue, Marshall, Texas 75670 and at Two Lincoln Centre, 5420 LBJ Freeway, Suite 750, Dallas, Texas 75240.

20. Plaintiff Gemini IP, LLC (successor by merger with Gemini IP Technologies, LLC) is a Texas limited liability company with its office at 207B North Washington Avenue, Marshall, Texas 75670.

21. Plaintiff Granicus IP, LLC (sole surviving entity of a merger between CT IP Holdings, LLC, MNT IP Holdings, LLC; PA Advisors Holdings, LLC; ST Sales Tech IP, LLC; and Travel IP Technologies, LLC) is a Texas limited liability company with its office at 207C North Washington Avenue, Marshall, Texas 75670.

22. Plaintiff TechDev Holdings, LLC (f/k/a Plutus IP, LLC) is a Texas limited liability company with its office at 207B North Washington Avenue, Marshall, Texas 75670.

23. Plaintiff Clear with Computers, LLC (f/k/a Orion IP, LLC) is a Texas limited liability company with its office at 207B North Washington Avenue, Marshall, Texas 75670.

24. Plaintiff Manufacturing Systems Technologies, LLC (f/k/a Taurus IP, LLC) is a Wisconsin limited liability company with its office at 207B North Washington Avenue, Marshall, Texas 75670.

25. Plaintiff Bright Response, LLC (f/k/a Polaris IP, LLC) is a Texas limited liability company with its office at 207B North Washington Avenue, Marshall, Texas 75670.

26. Plaintiff Presentation Specialist Technologies, LLC (f/k/a Constellation IP, LLC) is a Texas limited liability company with its office at 207B North Washington Avenue, Marshall, Texas 75670.

27. Plaintiff EMS Technologies, LLC (f/k/a Phoenix IP, LLC) is a Texas limited liability company with its office at 207B North Washington Avenue, Marshall, Texas 75670.

28. Plaintiff SFA Systems, LLC (f/k/a Triton IP, LLC) is a Texas limited liability company with its office at 207B North Washington Avenue, Marshall, Texas 75670.

29. Plaintiff nXn Tech, LLC (f/k/a PA Advisors, LLC) is a Texas limited liability company with its office at 207C North Washington Avenue, Marshall, Texas 75670.

30. Plaintiff ST Sales Tech Holdings, LLC is a Texas limited liability company with its office at 207C North Washington Avenue, Marshall, Texas 75670

31. Plaintiff TS Media Tech IP, LLC is a Texas limited liability company with its office at 207C North Washington Avenue, Marshall, Texas 75670

32. Plaintiff TT IP, LLC is a Texas limited liability company with its office at 207C North Washington Avenue, Marshall, Texas 75670

33. Plaintiff Cushion Technologies, LLC is a Texas limited liability company with its office at 207C North Washington Avenue, Marshall, Texas 75670.

34. Plaintiff LSC Holdings, LLC is a Texas limited liability company with offices in Dallas at 5420 LBJ Freeway, Suite 750, Dallas, Texas 75240.

35. On information and belief, Defendant Cisco Systems, Inc. is a California corporation with its principal place of business at 170 West Tasman Drive, San Jose, California 95134-1706. Cisco has appointed Corporation Service Company, which will do business in California as CSC-Lawyers Incorporating Service, 2730 Gateway Oaks Dr., Suite 100, Sacramento, California 95833, as its agent for service of process. In addition, Cisco, a California corporation, also is registered to do business in Texas, and its registered agent in Texas is Prentice Hall Corporation System, at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

## JURISDICTION AND VENUE

36. Jurisdiction is proper in this Court based on diversity of citizenship, 28 U.S.C. § 1332(a)(1) ("(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different States"). The amount in controversy far exceeds the $75,000 threshold given the value of (i) IPNav's consulting fees that it commands for its consulting services and (ii) IPNav's reputation, and (iii) IPNav's business relationships.

37. Cisco is a citizen of California as its state of incorporation and its principal place of business is in California. IPNav is a citizen of Texas for diversity jurisdiction purposes: its state of formation as a limited liability company and its principal place of business are in Texas. 28 U.S.C. § 1332(c)(1). All other co-Plaintiffs, with the exception of Manufacturing Systems Technologies, LLC—comprising TechDev Holdings, LLC; Gemini IP, LLC; Clear with

11

Computers, LLC; Bright Response, LLC; nXn Tech, LLC; SFA Systems, LLC; Presentation Specialist Technologies, LLC; EMS Technologies, LLC; Granicus IP, LLC; ST Sales Tech Holdings, LLC; TS Media Tech IP, LLC; TT IP, LLC; Cushion Technologies, LLC; and LSC Holdings, LLC—also are citizens of Texas for purposes of diversity jurisdiction: each is a Texas limited liability company with a principal place of business in Texas.  Manufacturing Systems Technologies, LLC is a citizen of Wisconsin, having been formed in Wisconsin, yet also maintains its principal office in Texas.

38. This Court has jurisdiction over the declaratory judgment relief sought as jurisdiction already exists pursuant to 28 U.S.C. § 1332(a)(1).  Cisco's actions, by its November 2 Letter, demonstrate a substantial and immediate controversy between Cisco and IPNav. Cisco's representations and the injury already manifesting to IPNav's client relationships demonstrate that the adversity between Cisco and IPNav is genuine and immediate, is causing IPNav financial injury, and will continue to cause IPNav additional further injury absent this Court's clarification of IPNav's rights and status under the Agreement.

39. On information and belief, Cisco is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its purposeful availment of the benefits and protections of Texas law by its general presence in the state, and by its doing substantial business in this state and this District, including but not limited to, contracting with citizens in Texas for contracts to be performed in whole or in part in Texas, as well as regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this District.  Further and more specifically, by its conduct and communications, Cisco has expressly taken aim at this forum, knowing that the brunt of this particular injury to

IPNav, a Texas company based in Texas with offices in Marshall and Dallas, would be felt by this particular resident. Cisco therefore would reasonably anticipate being haled into a Texas court and this District to answer for its actions.

40. Venue is proper in this District under 28 U.S.C. § 1391(a) because in this diversity case the defendant Cisco resides in this District pursuant to 28 U.S.C. § 1391(c). The preceding paragraphs concerning jurisdictional allegations as to Cisco are incorporated herein by reference for purpose of venue allegations as if fully set forth herein.

**COUNT I**

**<u>DECLARATORY JUDGMENT</u>**

41. All preceding paragraphs are incorporated by reference as if fully set forth herein in this Count I seeking a declaratory judgment. *See* 28 U.S.C. § 2201; FED. R. CIV. P. 57.

42. As set forth above and also specifically incorporated by reference for purposes of this Count, an actual controversy exists between the parties.

43. As set forth above and incorporated by reference for purposes of this Count, declaratory relief is necessary to allow IPNav to assure current clients and prospective clients that there is no limitation on its ability to provide its highly effective intellectual property consulting services to clients—even if those clients have intellectual property that Cisco or a Cisco customer is infringing or, based on investigation and/or due diligence, appears to be infringing.

44. IPNav therefore seeks a declaratory judgment concerning the rights and legal relations of the parties.

45. IPNav seeks specifically a declaration that:

   a. IPNav has not engaged in any conduct that could be considered a breach of contract;

   b. IPNav has not breached any contractual obligation under the Agreement;

   c. IPNav has not breached any implied covenant of good faith and fair dealing under the Agreement;

   d. IPNav's provision of its advisory services to its current clients would not be a breach of contract insofar as any such clients have pursued, are pursuing, or may pursue, patent infringement litigation against Cisco or a Cisco customer;

   e. IPNav's provision of or proposal to provide its advisory services to any prospective client is not a breach of contract insofar as any such clients have pursued, are pursuing, or may pursue, patent infringement litigation against Cisco or a Cisco customer.

## CONDITIONS PRECEDENT

46.     All conditions precedent have been met insofar as practically feasible.

47.     Any frustration of the fulfillment of any condition precedent to this proceeding is attributable to failure by Cisco in honoring its contractual obligations.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff IP Navigation Group, LLC respectfully prays for the following relief:

1.     A declaratory judgment as set forth above in paragraph 45;

2.     A declaratory judgment that IPNav has not committed any breach of contract, as detailed above in greater detail in paragraph 45;

3. A declaratory judgment that IPNav may provide consulting services to current, potential, and prospective clients even if the client has accused or may potentially accuse a Cisco product or a Cisco customer's product of infringement—as set forth in greater detail above in paragraph 45;

4. A declaratory judgment awarding IPNav damages;

5. A declaratory judgment awarding IPNav its attorneys fees as applicable;

6. Any relief to which IPNav may show itself to be entitled, including injunctive relief, and any additional and further relief that the Court may deem just and proper, including attorney's fees and pre and post judgment interest as applicable and costs of court at trial and on appeal.

## DEMAND FOR JURY TRIAL

IP Navigation Group, LLC under Rule 38 and Rule 39 of the Federal Rules of Civil Procedure requests a trial by jury of any issues triable by right.

Dated: December 13, 2010

Respectfully submitted,

IP NAVIGATION GROUP, LLC;
TECHDEV HOLDINGS, LLC (f/k/a PLUTUS IP, LLC);
GEMINI IP, LLC (successor by merger to GEMINI IP TECHNOLOGIES, LLC);
CLEAR WITH COMPUTERS, LLC (f/k/a Orion IP, LLC);
MANUFACTURING SYSTEMS TECHNOLOGIES, LLC (f/k/a TAURUS IP, LLC);
BRIGHT RESPONSE, LLC (f/k/a POLARIS IP, LLC);
SFA SYSTEMS, LLC (f/k/a TRITON IP, LLC);
PRESENTATION SPECIALIST TECHNOLOGIES, LLC (f/k/a CONSTELLATION IP, LLC);
EMS TECHNOLOGIES, LLC (f/k/a PHOENIX IP, LLC);
GRANICUS IP, LLC (successor by merger to CT IP HOLDINGS, LLC; MT IP HOLDINGS, LLC; PA ADVISORS HOLDINGS, LLC; ST SALES TECH IP, LLC; TRAVEL IP TECHNOLOGIES, LLC);
ST SALES TECH HOLDINGS, LLC;
nXn TECH, LLC (f/k/a PA ADVISORS, LLC);
TS MEDIA TECH IP, LLC;
TT IP, LLC;
CUSHION TECHNOLOGIES, LLC; and
LSC HOLDINGS, LLC

By: */s/ Andrew W. Spangler*

Andrew W. Spangler
LEAD COUNSEL and LOCAL COUNSEL
  Texas State Bar No. 24041960
Spangler Law P.C.
104 E. Houston St., Suite 135
Marshall, Texas 75670
903-935-3443
903-938-7843 (fax)
Email: spangler@spanglerlawpc.com

Gregory P. Love
Stevens, Love, Hill & Holt, PLLC
  Texas State Bar No. 24013060
111 W. Tyler St
Longview, Texas 75601
903-753-6760
903-753-6761 (fax)
Email:  Greg@stevenslove.com

*Attorneys for Plaintiffs*